## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

FREEPLAY MUSIC, LLC,

     Plaintiff,

vs.

FORD MOTOR COMPANY,

     Defendant.

Case No. 2-20-CV-10948-SJM-RSW
Hon. Stephen J. Murphy

**FIRST AMENDED COMPLAINT FOR COPYRIGHT INFRINGEMENT**

**DEMAND FOR JURY TRIAL**

---

Howard Hertz
MI Bar No. P26653
Hertz Schram PC
1760 S. Telegraph
Bloomfield, MI 48302
ph: 248.335.5000
fx: 248.335.3346
hhertz@hertzschram.com

Richard S. Busch
TN Bar No. 14594
*Pro Hac Vice forthcoming*
KING & BALLOW
315 Union Street, Suite 1100
Nashville, TN 37201
Telephone:   (615) 726-5422
Facsimile:    (615) 726-5417
rbusch@kingballow.com

*Attorneys for Plaintiff*

---

## **COMPLAINT**

Plaintiff Freeplay Music, LLC ("Plaintiff" or "FPM") by and through its attorneys for its complaint against Ford Motor Company ("Defendant" or "Ford") alleges as follows:

## **NATURE OF THE ACTION**

1.     This is an action for willful copyright infringement by a multibillion dollar company too cheap to secure licensing before commercially using registered works owned by another company. FPM is a popular digital music library that offers a large online catalog of over 50,000 creative works for licensing under clear terms of use provided for on the FPM website.  The FPM Copyrights are unique registered works made available by FPM for the material purpose of offering them for paid licensing for uses in any web (i.e., internet) broadcast commercial videos. FPM's business model is based on this premise. A significant market for FPM is thus licensing its works for a fee to companies to be used for commercial use as music in advertisements or other synchronized broadcast use on the internet where the music is placed with audiovisual works. Defendant Ford did exactly that – it used FPM Copyrights, which are the subject of this action, in its web broadcast advertisements for Ford automobile products. Defendant used the FPM Copyrights for the explicit purpose of selling Ford automobiles via broadcast advertising on the internet to increase its sales. Ford therefore derived revenue and profits as a direct result of

those infringing videos and commercial web broadcast advertisements. However, as discussed more fully below, Defendant never acquired a license to use the FPM Copyrights in any way, though it has continued for years to exploit the FPM Copyrights to further promote its own business, and Defendant cannot claim that it obtained the FPM Copyrights any place other than the FPM website, as the FPM Copyrights involved in this action are exclusively offered only on the FPM website. As a world-wide company that is in the business of commercially advertising its automobile products via broadcast on the internet on a global scale, Defendant knows it must obtain a license to use other's intellectual property, including and specifically musical compositions and recordings, in order to synchronize that copyrighted music in its commercially broadcast video advertisements. Yet, it willfully and consciously did not do so here on a breathtaking scale. The infringement is continuing to this very day.

2.    FPM owns the 54 duly registered copyrights that Defendant has infringed, all of which are identified on Exhibit A (the "FPM Copyrights"). FPM has identified, through TuneSat's (defined below) audio fingerprint technology, that Defendant has exploited the FPM Copyrights in at least seventy-four (74) different promotional videos, i.e., commercials and advertisements on the internet (the "Infringing Works"), as explained further below and identified in Exhibit B hereto. In fact, Defendant's use of the FPM Copyrights is a direct lifting, meaning

3

Defendant used the exact works exclusively offered on FPM's website that require a license and payment.

3.     On April 17, 2017, TuneSat, on behalf of its customer FPM, notified Defendant of its unauthorized use of certain of FPM's Copyrights involved herein and requested proof of licensing. Defendant, having never acquired a license from FPM, was unable to provide proof of licensing.

4.     Since that time, through great effort, FPM was able to identify many other unauthorized uses by Defendant of the FPM Copyrights.  This is no small feat, considering there are over a billion websites on the internet. There are likely many other unauthorized uses that have not yet been discovered. For FPM to be able to find every use of FPM's works on the internet would be impossible. It is nothing short of a miracle that FPM has discovered those involved herein. Finding these infringements is akin to finding a needle in a haystack. Defendant apparently counted on the difficulty of being caught in deciding to engage in this massive willful copyright infringement. Defendant is the only party with knowledge of its entire universe of Infringing Works, not FPM.

5.     As Defendant has continued its rampant and widespread infringement, including continuing infringements from years prior, as well as beginning numerous new and separate infringements discussed herein, FPM has been left with no choice but to bring this action against Defendant for its continued and willful unauthorized

use of FPM's Copyrights.

6.     FPM thus brings this action to vindicate its rights for the willful infringement of the FPM Copyrights, to recover damages, and requests that this Court grant the maximum award of statutory damages for willful copyright infringement in the amount of $150,000.00 per infringed work. In light of Defendant's blatant and willful copyright infringement, anything less than the maximum statutory award of $150,000.00 per infringed work would not get the attention of a multibillion dollar corporation that continues to commit widespread infringement. Anything less than the maximum in statutory damages would also not deter future infringement.

## THE PARTIES

7.     Plaintiff FPM is a Delaware limited liability company with a principal place of business at 1650 Broadway, Suite 1108, New York, New York, 10019, and is the rightful owner of the FPM Copyrights, all duly registered with the United States Copyright Office. The titles and registration numbers for each work are listed in Exhibit A.

8.     Upon information and belief, Defendant Ford is a company organized under the laws of the State of Delaware with a principal place of business located at One American Road, Dearborn, Michigan, 48126.

## JURISDICTION

9.     Plaintiff's claims arise under the Copyright Act, 17 U.S.C. §§ 101 *et seq.* Subject matter jurisdiction over this action is conferred upon this Court by 28 U.S.C. §§ 1331 and 1338.

10.     This Court has general personal jurisdiction over Defendant Ford because, upon information and belief, its principal place of business is in Dearborn, Michigan.

11.     This Court has specific personal jurisdiction over Defendant because its suit-related conduct creates a substantial connection with the State of Michigan.

12.     Upon information and belief, Defendant has generated substantial revenue from the exploitation of the Infringing Works (as defined below and as identified in Exhibit B, attached hereto) in Michigan.

13.     Upon information and belief, Defendant exploited the Infringing Works within the State of Michigan, and/or authorized the same within the State of Michigan.

14.     Upon information and belief, Defendant has continuously and systematically transacted business within the State of Michigan by operating and maintaining an interactive website that allows for the transaction of business with customers located therein.

15.     Upon information and belief, Defendant benefited substantially from

its exploitation of the Infringing Works within the State of Michigan.

16.     Defendant has knowingly and willfully exploited the Infringing Works within the State of Michigan.

## VENUE

17.     Venue is proper in this District pursuant to 28 U.S.C. §§ 1391 and 1400(a) because a substantial part of the events giving rise to the claim occurred in this Judicial District and because Defendant is subject to personal jurisdiction within this Judicial District.

18.     This case is properly filed in the Eastern District of Michigan, as a substantial portion of events giving rise to this case occurred within this Judicial District.

## BACKGROUND

### I.     Introduction to FPM and its Business Model

19.     Scott Schreer ("Schreer"), one of America's most prolific and performed TV composers and producers, formed FPM in 2001 as a high-quality online music library. Schreer, whose credits include, among many others, the *NFL on Fox* theme, is also a contributing composer to FPM's music catalog. Schreer has won 7 Distinguished BMI songwriter of the year awards over the last ten years. BMI only gives out 25 such awards per year to their more than 1 million current writer and publisher members.

20.   FPM is one of the world's most visited and popular online music production library destination portals for major broadcasters, advertisers, production studios, prosumers and consumers alike. FPM exclusively offers its music catalog of over 50,000 creative works, representing 480 composers. Its catalog is available for licensed commercial use intended to be synchronized with audiovisual works. FPM has issued more than 4 million internet licenses in the past 3 years alone with more than 250 million impressions to its website since its inception.

21.   FPM's website (freeplaymusic.com) clearly states that each of its songs, including the FPM Copyrights, must be licensed for commercial use. For example, there is a "Pricing" and a "Shopping Cart" feature prominently located at the top right of its website:



22.   Under the Pricing tab, FPM's website lists that the annual fee for Advertising for TV/Radio/Web, for "Web Only," is $250 per song, per video. The Web Only usage clearly states that "This license is for the use of one track in one advertisement, to be posted on unlimited URLs for one (1) year. Please read our TERMS OF USE carefully about the restrictions of this license."

23.   Under the Pricing tab, FPM's website lists that the annual fee for Advertising for "TV/Radio/Web" is $500 per song, per video. The TV/Radio/Web

usage clearly states that "This license is for the use of one track in one advertisement, to be posted on *unlimited URLs* and broadcast on television and/or radio for one (1) year. Please read our TERMS OF USE carefully about the restrictions of this license."

24.     Under the Pricing Tab, FPM's website lists that for YouTube Business Use, "For the use of one track in one business-related video, to be posted on unlimited URLs for one year." The fee for the YouTube Business Use is $250 for one year.

25.     Additionally, FPM's website is governed by its Terms of Use Agreement ("Terms of Use"), entitled "Freeplay Music LLC Terms of Use Agreement," which can be found at the following URL: https://freeplaymusic.com/#/terms. The Terms of Use state the following, "**PLEASE** <u>**CLICK HERE**</u> **TO READ MORE ABOUT OUR MUSIC LICENSING. A WRITTEN LICENSE IS REQUIRED FOR ALL USE OF FREEPLAY'S MUSIC.**" It takes you to the Pricing site, mentioned directly above.

26.     As FPM's website makes clear, FPM requires users to license each of its works, including the FPM Copyrights, for any commercial exploitation on YouTube or otherwise.

27.     Prior to downloading and using FPM's music, including the FPM Copyrights, users must enter into a written license agreement with FPM that

corresponds with the user's intended use of the works (i.e., personal or commercial). The fee for such licenses varies, as discussed above, but Defendant's exploitations of the Infringing Works would have been *at least* $250 per each track, per each video use for a one (1) year license.

28.    Additionally, the front page of FPM's website lists the "Top Tracks," as shown directly below. There is a shopping cart image below the column that says "License." At all relevant times herein, FPM has made it clear that a license is required for commercial use of its works.



## II.    Defendant's Unauthorized Use of the FPM Copyrights

29.    FPM is the exclusive owner of the FPM Copyrights, which have been duly registered with the United States Copyright Office as identified on Exhibit A.

30.    TuneSat, LLC ("TuneSat") is a company that detects uses of works in its system that are exploited online and on television. TuneSat pairs licensed and unlicensed uses with the corresponding works. TuneSat, LLC services major music publishing companies, major record labels, and other copyright owners on a global

scale in 14 countries and through millions of websites. TuneSat has more than 10,000 registered user accounts worldwide. One of its customers is FPM.

31.   After identifying Defendant's uses of twelve (12) of the FPM Copyrights, TuneSat, on behalf of its customer FPM, sent an e-mail to Defendant on April 17, 2017 identifying the FPM Copyrights at issue and requested that Defendant send any requisite licenses it claimed to have for those uses by May 1, 2017.

32.   Defendant could not and did not provide any requisite licenses for its use of the twelve (12) FPM Copyrights and has continued to infringe those works within the last three years through the continued public performance of the commercial videos on the internet.

33.   Defendant's infringement has not only continued, it has been willful and knowing. As mentioned above, Defendant is a world-wide company that is in the business of advertising its automobile products on a global scale, including, most relevant to this case, on the internet. Defendant knows it must obtain a license to use other's intellectual property, including and specifically musical compositions and recordings, in order to synchronize that copyrighted music in its video advertisements. Yet, it willfully and consciously did not do so time and time again. FPM has also now discovered that Defendant has committed new infringements of FPM Copyrights online in new Infringing Works. All of the unauthorized uses involved herein are identified in the attached Exhibit B.

34.     FPM has taken on a monumental undertaking in searching across the internet to uncover more than sixty additional infringing videos posted by Defendant (listed on the attached Exhibit C). As mentioned above, the internet has over a billion websites, and it is nothing short of a miracle that FPM was even able to find the infringements identified herein. This is so despite incredible diligence, not required by law, and far and above beyond that required of a reasonable business. As a result, for those uses only discovered within the last three years, identified on Exhibit C, the claims for infringement would only have accrued upon discovery.   The remainder of the infringements involved herein, identified on Exhibit D, which were known to FPM more than 3 years ago, have continued within the last three years.

35.     As discussed above, the FPM Copyrights are made available for the material purpose of being offered for paid licenses for uses in web commercial videos, and FPM's business model is based on this premise. The Infringing Works, which are web advertisements for Ford automobile products containing the FPM Copyrights, synchronize the FPM Copyrights with visual images of Ford automobile products and other visual images as a part of advertisements for those Ford automobile products, and required a license and payment. In fact, the FPM Copyrights are a substantial portion of the Infringing Works, often the main sound in the videos and played for the entirety of the Infringing Works.

36.     Because Defendant did not obtain a license, the Infringing Works

diminish the value of the FPM Copyrights and the potential market for the FPM Copyrights. If the FPM Copyrights are available for free instead of through the proper license process, then the value and market of FPM Copyrights is severely damaged.

### III. Direct Copying

37.     As mentioned above, Defendant's unauthorized uses of the FPM Copyrights consist of direct actual copying of the FPM Copyrights embedded within its own promotional videos.

38.     Because Defendant's use of the FPM Copyrights are direct copies, the qualitative and quantitative similarities are literally identical.

39.     There is also no doubt that Defendant had access to the FPM Copyrights. TuneSat inquired as to whether Defendant had a license for its twelve (12) uses of the FPM Copyrights on April 17, 2017, and Defendant could not provide licenses for the use of those registered works.  Defendant has also never denied using the FPM Copyrights, and could only have obtained access from the FPM website. The FPM Copyrights involved in this action are solely and exclusively available on the FPM website.

### V. Continued Exploitation

40.     Even after being confronted by TuneSat and FPM in 2017, Defendant continued to use and exploit the FPM Copyrights in its Infringing Works willfully

and without any regard for FPM's rights.

41.    Over the course of 2017, 2018, and 2019, TuneSat continued to discover additional infringements of FPM Copyrights in Defendant's videos, all together totaling at least fifty-four (54) FPM Copyrights in seventy-four (74) of Defendant's videos. Defendant exploited the FPM Copyrights, without authorization, on YouTube and Facebook, all of which are identified and listed on Exhibit B, attached hereto. Had FPM not been so vigilant as to use TuneSat to search Defendant's videos uploaded across various streaming platforms, there is no way even a reasonable copyright owner could have discovered these infringements. Upon information and belief, Defendant continued to improperly exploit the FPM Copyrights until at least April 16, 2020.

## COUNT I:

## <u>COPYRIGHT INFRINGEMENT</u>

42.    FPM respectfully repeats and incorporates by reference the allegations contained within Paragraphs 1 through 41 as though fully set forth herein.

43.    FPM is the legal and beneficial owner of the United States copyright in all rights, titles, and interests in the sound recordings and musical compositions listed in Exhibit A attached hereto.

44.    Each of the fifty-four (54) FPM Copyrights have been duly registered with the U.S. Copyright Office, and registration numbers for the FPM Copyrights

are identified in Exhibit A.

45.    Defendant willfully exploited at least fifty-four (54) FPM Copyrights at least seventy-four (74) times in commercial videos, as identified in Exhibit B. The Infringing Works have been viewed thousands of times over the years on YouTube alone.  The infringement has continued until at least April 16, 2020.

46.    As discussed herein, Defendant had access to the FPM Copyrights and because the uses are a direct copying, the similarities are identical.

47.    Defendant knowingly exploited the FPM Copyrights without authorization to do so.

48.    TuneSat sent correspondence to Defendant on April 17, 2017 demanding that it provide valid licenses for its uses of twelve (12) of the FPM Copyrights.

49.    Not only could Defendant not provide any licenses for the twelve (12) uses of FPM Copyrights it was using at that time, Defendant continued to willfully, intentionally, and purposefully use and exploit the FPM Copyrights in its Infringing Works.

50.    Over the course of 2017, 2018, and 2019, TuneSat, through repeated searches, continued to discover additional infringements of FPM Copyrights in Defendant's videos, all together totaling at least fifty-four (54) FPM Copyrights in seventy-four (74) of Defendant's videos, all of which are identified and listed on

Exhibit B, attached hereto.

51.     Defendant's continuing unauthorized reproduction, distribution, public performance, synchronization, and display of the FPM Copyrights infringes FPM's exclusive rights in violation of the Copyright Act, 17 U.S.C. §§ 101, *et seq*.

52.     Defendant's conduct, at all times relevant to this action, has been knowing, willful, and with complete disregard to FPM's rights. Defendant understood the FPM licensing process yet willfully chose to continue to exploit the FPM Copyrights over the course of several years without obtaining the necessary licenses and making the required payments. Defendant obtained significant profit, through the unauthorized use of the FPM Copyrights. Namely, the FPM Copyrights, which run throughout many of the advertisements prominently, assisted in the selling of Ford automobiles. Defendant would not have massively and prominently used the FPM Copyrights as they did if that were not the case.

53.     As a proximate cause of Defendant's wrongful conduct, FPM has been irreparably harmed and suffered actual damages including lost profits and licensing fees.

54.     Pursuant to 17 U.S.C. § 504(b), FPM is entitled to damages, including Defendant's profits, in an amount to be proven at trial.

55.     Pursuant to 17 U.S.C. § 504(c), FPM is alternatively entitled to the maximum amount of statutory damages, $150,000.00, for willful copyright

infringement of each registered work, which upon information and belief, is not less than $8,100,000.00.

56.     As a direct and proximate result of Defendant's infringement, FPM has incurred attorneys' fees and costs which are recoverable pursuant to 17 U.S.C. § 505.

57.     Defendant's conduct has caused, is continuing to cause, and will further cause great damage to FPM, which damages cannot be accurately measured in monetary terms, and therefore, unless enjoined by the Court, FPM will suffer irreparable injury, for which FPM is without adequate remedy at law. Accordingly, FPM is entitled to a permanent injunction pursuant to 17 U.S.C. § 502 following judgment, prohibiting further infringement, reproduction, distribution, sale, public performance, other use, or exploitation of FPM's registered works.

## **PRAYER FOR RELIEF**

WHEREFORE, FPM prays for judgment and relief, as follows:

A.     For judgment in favor of FPM and against Defendant;

B.     A declaration and finding that Defendant has infringed the FPM Copyrights in violation of the Copyright Act of 1976, as amended, 17 U.S.C. §§ 101, *et seq*.;

C.     A declaration and finding that Defendant's infringement of the FPM Copyrights was knowing, willful, and with complete disregard of FPM's rights;

D.     A permanent injunction requiring Defendant and its agents, servants,

employees, officers, attorneys, successors, licensees, partners, and assigns, and all persons acting in concert or participation with each or any one of them, to cease directly and indirectly infringing, and causing, enabling, facilitating, encouraging, promoting, inducing, and/or participating in the infringement of any of FPM's rights protected by the Copyright Act;

E.     An award of damages pursuant to 17 U.S.C. § 504(b), including actual damages, and Defendant's profits in an amount to be proven at trial, or, in the alternative, the maximum amount of statutory damages pursuant to 17 U.S.C. § 504(c) for willful infringement of $150,000.00 per infringed work for a cumulative total of not less than $8,100,000.00;

F.     For costs of suit herein, including an award of attorneys' fees and costs pursuant to 17 U.S.C. § 505 and under other applicable law;

G.     Order that Defendant be required to pay to FPM pre-judgment and post-judgment interest according to law; and

H.     For such other and further relief as the Court may deem just and proper.


Dated: April 20, 2020                     Respectfully submitted,

                                          By: /s/ Howard Hertz_____
                                          Howard Hertz
                                          MI Bar No. P26653
                                          Hertz Schram PC
                                          1760 S Telegraph
                                          Bloomfield Hills MI 48302

ph: 248.335.5000
fx: 248.335.3346
hhertz@hertzschram.com

Richard S. Busch
TN Bar No. 14594
*Pro Hac Vice forthcoming*
KING & BALLOW
315 Union Street, Suite 1100
Nashville, TN 37201
Telephone:   (615) 726-5422
Facsimile:    (615) 726-5417
rbusch@kingballow.com

*Attorneys for Plaintiff*

## <u>DEMAND FOR JURY TRIAL</u>

Pursuant to Federal Rule of Civil Procedure Rule 38(b), and otherwise, FPM

respectfully demands a trial by jury on all issues so triable.


Dated: April 20, 2020                              Respectfully submitted,

                                                 By: /s/ Howard Hertz_____
   Howard Hertz
   MI Bar No. P26653
   Hertz Schram PC
   1760 S Telegraph
   Bloomfield Hills MI 48302
   ph: 248.335.5000
   fx: 248.335.3346
   hhertz@hertzschram.com

   Richard S. Busch
   TN Bar No. 14594
   *Pro Hac Vice forthcoming*
   KING & BALLOW
   315 Union Street, Suite 1100
   Nashville, TN 37201
   Telephone:   (615) 726-5422
   Facsimile:    (615) 726-5417
   rbusch@kingballow.com

   *Attorneys for Plaintiff*