## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN

FREEPLAY MUSIC, LLC,    )
            )
  Plaintiff,      )
            ) Case No.: 2-20-CV-10948-SJM-RSW
  vs.        )
            ) Hon. Stephen J. Murphy
FORD MOTOR COMPANY,   )
            ) JURY TRIAL DEMANDED
  Defendant.     )
            )

## ANSWER AND COUNTERCLAIMS

  Defendant, Ford Motor Company ("Ford"), by and through its attorneys Loeb & Loeb LLP, answers and brings counterclaims to Plaintiff Freeplay Music, LLC's ("Freeplay") First Amended Complaint for Copyright Infringement as follows:

## NATURE OF THE ACTION

  1.  This is an action for willful copyright infringement by a multibillion dollar company too cheap to secure licensing before commercially using registered works owned by another company. FPM is a popular digital music library that offers a large online catalog of over 50,000 creative works for licensing under clear terms of use provided for on the FPM website. The FPM Copyrights are unique registered works made available by FPM for the material purpose of offering them for paid licensing for uses in any web (i.e., internet) broadcast commercial videos. FPM's business model is based on this premise. A significant market for FPM is thus licensing its works for a fee to companies to be used for commercial use as music in advertisements or other synchronized broadcast use on the internet where the music is placed with audiovisual works. Defendant Ford did exactly that – it used FPM Copyrights, which are the subject of this action, in its web broadcast advertisements for Ford automobile products. Defendant used the FPM

Copyrights for the explicit purpose of selling Ford automobiles via broadcast advertising on the internet to increase its sales.  Ford therefore derived revenue and profits as a direct result of those infringing videos and commercial web broadcast advertisements.  However, as discussed more fully below, Defendant never acquired a license to use the FPM Copyrights in any way, though it has continued for years to exploit the FPM Copyrights to further promote its own business, and Defendant cannot claim that it obtained the FPM Copyrights any place other than the FPM website, as the FPM Copyrights involved in this action are exclusively offered only on the FPM website. As a world-wide company that is in the business of commercially advertising its automobile products via broadcast on the internet on a global scale, Defendant knows it must obtain a license to use other's intellectual property, including and specifically musical compositions and recordings, in order to synchronize that copyrighted music in its commercially broadcast video advertisements.  Yet, it willfully and consciously did not do so here on a breathtaking scale.  The infringement is continuing to this very day.

> **ANSWER:**    Ford denies the allegations contained in paragraph 1.

2.    FPM owns the 54 duly registered copyrights that Defendant has infringed, all of which are identified on Exhibit A (the "FPM Copyrights").  FPM has identified, through TuneSat's (defined below) audio fingerprint technology, that Defendant has exploited the FPM Copyrights in at least seventy-four (74) different promotional videos, i.e., commercials and advertisements on the internet (the "Infringing Works"), as explained further below and identified in Exhibit B hereto. In fact, Defendant's use of the FPM Copyrights is a direct lifting, meaning Defendant used the exact works exclusively offered on FPM's website that require a license and payment.

**ANSWER:**   Ford denies the allegations contained in paragraph 2, except states that it lacks knowledge or information sufficient to form a belief as to the truth of the allegations concerning Freeplay's ownership of the referenced copyrights.

3.       On April 17, 2017, TuneSat, on behalf of its customer FPM, notified Defendant of its unauthorized use of certain of FPM's Copyrights involved herein and requested proof of licensing.  Defendant, having never acquired a license from FPM, was unable to provide proof of licensing.

**ANSWER:**   Ford denies the allegations contained in paragraph 3, except admits that TuneSat contacted Ford on or about April 17, 2017 concerning alleged uses of Freeplay's music.

4.       Since that time, through great effort, FPM was able to identify many other unauthorized uses by Defendant of the FPM Copyrights.  This is no small feat, considering there are over a billion websites on the internet.  There are likely many other unauthorized uses that have not yet been discovered.  For FPM to be able to find every use of FPM's works on the internet would be impossible.  It is nothing short of a miracle that FPM has discovered those involved herein.  Finding these infringements is akin to finding a needle in a haystack.  Defendant apparently counted on the difficulty of being caught in deciding to engage in this massive willful copyright infringement.  Defendant is the only party with knowledge of its entire universe of Infringing Works, not FPM.

**ANSWER:**   Ford denies the allegations contained in paragraph 4 as they relate to Ford's conduct, and states that it lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 4.

5.       As Defendant has continued its rampant and widespread infringement, including continuing infringements from years prior, as well as beginning numerous new and separate

infringements discussed herein, FPM has been left with no choice but to bring this action against Defendant for its continued and willful unauthorized use of FPM's Copyrights.

**ANSWER:**   Ford denies the allegations contained in paragraph 5.

6.      FPM thus brings this action to vindicate its rights for the willful infringement of the FPM Copyrights, to recover damages, and requests that this Court grant the maximum award of statutory damages for willful copyright infringement in the amount of $150,000.00 per infringed work.  In light of Defendant's blatant and willful copyright infringement, anything less than the maximum statutory award of $150,000.00 per infringed work would not get the attention of a multibillion dollar corporation that continues to commit widespread infringement.  Anything less than the maximum in statutory damages would also not deter future infringement.

**ANSWER:**   Ford denies the allegations contained in paragraph 6, except admits that Freeplay purports to bring this action for copyright infringement.

### THE PARTIES

7.      Plaintiff FPM is a Delaware limited liability company with a principal place of business at 1650 Broadway, Suite 1108, New York, New York, 10019, and is the rightful owner of the FPM Copyrights, all duly registered with the United States Copyright Office. The titles and registration numbers for each work are listed in Exhibit A.

**ANSWER:**   Ford lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 7.

8.      Upon information and belief, Defendant Ford is a company organized under the laws of the State of Delaware with a principal place of business located at One American Road, Dearborn, Michigan, 48126.

**ANSWER:**   Ford admits the allegations of paragraph 8.

4

## JURISDICTION

9.      Plaintiff's claims arise under the Copyright Act, 17 U.S.C. §§ 101 et seq.  Subject matter jurisdiction over this action is conferred upon this Court by 28 U.S.C. §§ 1331 and 1338.

**ANSWER:**      Paragraph 9 contains legal conclusions, to which no response is required. To the extent a response is required, Ford denies that Freeplay has valid claims arising under the Copyright Act, but states that it does not challenge subject matter jurisdiction in this action.

10.      This Court has general personal jurisdiction over Defendant Ford because, upon information and belief, its principal place of business is in Dearborn, Michigan.

**ANSWER:**      Paragraph 10 contains legal conclusions, to which no response is required. To the extent a response is required, Ford states that it does not challenge personal jurisdiction in this action.

11.      This Court has specific personal jurisdiction over Defendant because its suit-related conduct creates a substantial connection with the State of Michigan.

**ANSWER:**      Paragraph 11 contains legal conclusions, to which no response is required. To the extent a response is required, Ford states that it does not challenge personal jurisdiction in this action.

12.      Upon information and belief, Defendant has generated substantial revenue from the exploitation of the Infringing Works (as defined below and as identified in Exhibit B, attached hereto) in Michigan.

**ANSWER:**      Ford denies the allegations contained in paragraph 12.

13.      Upon information and belief, Defendant exploited the Infringing Works within the State of Michigan, and/or authorized the same within the State of Michigan.

**ANSWER:**      Ford denies the allegations contained in paragraph 13.

14.     Upon information and belief, Defendant has continuously and systematically transacted business within the State of Michigan by operating and maintaining an interactive website that allows for the transaction of business with customers located therein.

**ANSWER:**     Ford admits that it transacts business in the State of Michigan, including the maintenance of a website unrelated to the issues in this action, and states that the remaining allegations constitute legal conclusions to which no response is required.  To the extent a response is required, Ford states that it does not challenge personal jurisdiction in this action.

15.     Upon information and belief, Defendant benefited substantially from its exploitation of the Infringing Works within the State of Michigan.

**ANSWER:**     Ford denies the allegations contained in paragraph 15.

16.     Defendant has knowingly and willfully exploited the Infringing Works within the State of Michigan.

**ANSWER:**     Ford denies the allegations contained in paragraph 16.

## VENUE

17.     Venue is proper in this District pursuant to 28 U.S.C. §§ 1391 and 1400(a) because a substantial part of the events giving rise to the claim occurred in this Judicial District and because Defendant is subject to personal jurisdiction within this Judicial District.

**ANSWER:**     Paragraph 17 contains legal conclusions, to which no response is required. To the extent a response is required, Ford denies that a substantial part of the events giving rise to this action occurred in this District or in any other jurisdiction in the United States, but states that it does not challenge venue for purposes of this action.

18.     This case is properly filed in the Eastern District of Michigan, as a substantial portion of events giving rise to this case occurred within this Judicial District.

**ANSWER:**   Paragraph 18 contains legal conclusions, to which no response is required. To the extent a response is required, Ford denies that a substantial portion of the events giving rise to this action occurred in this District or in any other jurisdiction in the United States, but states that it does not challenge venue for purposes of this action.

## BACKGROUND

### I.   Introduction to FPM and its Business Model

19.    Scott Schreer ("Schreer"), one of America's most prolific and performed TV composers and producers, formed FPM in 2001 as a high-quality online music library. Schreer, whose credits include, among many others, the NFL on Fox theme, is also a contributing composer to FPM's music catalog. Schreer has won 7 Distinguished BMI songwriter of the year awards over the last ten years. BMI only gives out 25 such awards per year to their more than 1 million current writer and publisher members.

**ANSWER:**   Ford lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 19.

20.    FPM is one of the world's most visited and popular online music production library destination portals for major broadcasters, advertisers, production studios, prosumers and consumers alike. FPM exclusively offers its music catalog of over 50,000 creative works, representing 480 composers. Its catalog is available for licensed commercial use intended to be synchronized with audiovisual works. FPM has issued more than 4 million internet licenses in the past 3 years alone with more than 250 million impressions to its website since its inception.

**ANSWER:**   Ford lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 20.

21.     FPM's website (freeplaymusic.com) clearly states that each of its songs, including the FPM Copyrights, must be licensed for commercial use.  For example, there is a "Pricing" and a "Shopping Cart" feature prominently located at the top right of its website:



**ANSWER:**    Ford denies the allegations contained in paragraph 21, as it falsely characterizes Freeplay's website at the time of the purported uses of the songs at issue in this action and/or the conduct alleged in Freeplay's Amended Complaint.

22.     Under the Pricing tab, FPM's website lists that the annual fee for Advertising for TV/Radio/Web, for "Web Only," is $250 per song, per video.  The Web Only usage clearly states that "This license is for the use of one track in one advertisement, to be posted on unlimited URLs for one (1) year.  Please read our TERMS OF USE carefully about the restrictions of this license."

**ANSWER:**    Ford denies the allegations contained in paragraph 22, as it falsely characterizes Freeplay's website at the time of the purported uses of the songs at issue in this action and/or the conduct alleged in Freeplay's Amended Complaint.

23.     Under the Pricing tab, FPM's website lists that the annual fee for Advertising for "TV/Radio/Web" is $500 per song, per video. The TV/Radio/Web usage clearly states that "This license is for the use of one track in one advertisement, to be posted on unlimited URLs and broadcast on television and/or radio for one (1) year.  Please read our TERMS OF USE carefully about the restrictions of this license."

**ANSWER:**    Ford denies the allegations contained in paragraph 23, as it falsely characterizes Freeplay's website at the time of the purported uses of the songs at issue in this action and/or the conduct alleged in Freeplay's Amended Complaint.

24.     Under the Pricing Tab, FPM's website lists that for YouTube Business Use, "For the use of one track in one business-related video, to be posted on unlimited URLs for one year." The fee for the YouTube Business Use is $250 for one year.

**ANSWER:**   Ford denies the allegations contained in paragraph 24, as it falsely characterizes Freeplay's website at the time of the purported uses of the songs at issue in this action and/or the conduct alleged in Freeplay's Amended Complaint.

25.     Additionally, FPM's website is governed by its Terms of Use Agreement ("Terms of Use"), entitled "Freeplay Music LLC Terms of Use Agreement," which can be found at the following URL: https://freeplaymusic.com/#/terms. The Terms of Use state the following, "**PLEASE UNDERLINE CLICK HERE TO READ MORE ABOUT OUR MUSIC LICENSING. A WRITTEN LICENSE IS REQUIRED FOR ALL USE OF FREEPLAY'S MUSIC**." It takes you to the Pricing site, mentioned directly above.

**ANSWER:**   Ford denies the allegations contained in paragraph 25, as it falsely characterizes Freeplay's website at the time of the purported uses of the songs at issue in this action and/or the conduct alleged in Freeplay's Amended Complaint.

26.     As FPM's website makes clear, FPM requires users to license each of its works, including the FPM Copyrights, for any commercial exploitation on YouTube or otherwise.

**ANSWER:**   Ford denies the allegations contained in paragraph 26, as it falsely characterizes Freeplay's website at the time of the purported uses of the songs at issue in this action and/or the conduct alleged in Freeplay's Amended Complaint.

27.     Prior to downloading and using FPM's music, including the FPM Copyrights, users must enter into a written license agreement with FPM that corresponds with the user's intended use of the works (i.e., personal or commercial).  The fee for such licenses varies, as discussed

above, but Defendant's exploitations of the Infringing Works would have been at least $250 per each track, per each video use for a one (1) year license.

**ANSWER:**   Ford denies the allegations contained in paragraph 27, as it falsely characterizes Freeplay's website at the time of the purported uses of the songs at issue in this action and/or the conduct alleged in Freeplay's Amended Complaint.

28.    Additionally, the front page of FPM's website lists the "Top Tracks," as shown directly below. There is a shopping cart image below the column that says "License." At all relevant times herein, FPM has made it clear that a license is required for commercial use of its works.



**ANSWER:**   Ford denies the allegations contained in paragraph 28, as it falsely characterizes Freeplay's website at the time of the purported uses of the songs at issue in this action and/or the conduct alleged in Freeplay's Amended Complaint.

## II.    **Defendant's Unauthorized Use of the FPM Copyrights**

29.    FPM is the exclusive owner of the FPM Copyrights, which have been duly registered with the United States Copyright Office as identified on Exhibit A.

**ANSWER:**   Ford lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 29.

30.     TuneSat, LLC ("TuneSat") is a company that detects uses of works in its system that are exploited online and on television. TuneSat pairs licensed and unlicensed uses with the corresponding works.  TuneSat, LLC services major music publishing companies, major record labels, and other copyright owners on a global scale in 14 countries and through millions of websites. TuneSat has more than 10,000 registered user accounts worldwide.  One of its customers is FPM.

**ANSWER:**    Ford lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 30.

31.     After identifying Defendant's uses of twelve (12) of the FPM Copyrights, TuneSat, on behalf of its customer FPM, sent an e-mail to Defendant on April 17, 2017 identifying the FPM Copyrights at issue and requested that Defendant send any requisite licenses it claimed to have for those uses by May 1, 2017.

**ANSWER:**    Ford denies the allegations contained in paragraph 31, except admits that TuneSat contacted Ford on or about April 17, 2017 concerning alleged uses of Freeplay's music.

32.     Defendant could not and did not provide any requisite licenses for its use of the twelve (12) FPM Copyrights and has continued to infringe those works within the last three years through the continued public performance of the commercial videos on the internet.

**ANSWER:**    Ford denies the allegations contained in paragraph 32, except admits that it is not in possession of the referenced licenses.

33.     Defendant's infringement has not only continued, it has been willful and knowing. As mentioned above, Defendant is a world-wide company that is in the business of advertising its automobile products on a global scale, including, most relevant to this case, on the internet. Defendant knows it must obtain a license to use other's intellectual property, including and

specifically musical compositions and recordings, in order to synchronize that copyrighted music in its video advertisements.  Yet, it willfully and consciously did not do so time and time again.  FPM has also now discovered that Defendant has committed new infringements of FPM Copyrights online in new Infringing Works.  All of the unauthorized uses involved herein are identified in the attached Exhibit B.

**ANSWER:**   Ford denies the allegations contained in paragraph 33.

34.    FPM has taken on a monumental undertaking in searching across the internet to uncover more than sixty additional infringing videos posted by Defendant (listed on the attached Exhibit C).  As mentioned above, the internet has over a billion websites, and it is nothing short of a miracle that FPM was even able to find the infringements identified herein.  This is so despite incredible diligence, not required by law, and far and above beyond that required of a reasonable business.  As a result, for those uses only discovered within the last three years, identified on Exhibit C, the claims for infringement would only have accrued upon discovery.  The remainder of the infringements involved herein, identified on Exhibit D, which were known to FPM more than 3 years ago, have continued within the last three years.

**ANSWER:**   Ford denies the allegations contained in paragraph 34 as they relate to Ford's conduct, and states that it lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 34.

35.    As discussed above, the FPM Copyrights are made available for the material purpose of being offered for paid licenses for uses in web commercial videos, and FPM's business model is based on this premise.  The Infringing Works, which are web advertisements for Ford automobile products containing the FPM Copyrights, synchronize the FPM Copyrights with visual images of Ford automobile products and other visual images as a part of advertisements for those

Ford automobile products, and required a license and payment. In fact, the FPM Copyrights are a substantial portion of the Infringing Works, often the main sound in the videos and played for the entirety of the Infringing Works.

**ANSWER:** Ford denies the allegations contained in paragraph 35.

36. Because Defendant did not obtain a license, the Infringing Works diminish the value of the FPM Copyrights and the potential market for the FPM Copyrights. If the FPM Copyrights are available for free instead of through the proper license process, then the value and market of FPM Copyrights is severely damaged.

**ANSWER:** Ford denies the allegations contained in paragraph 36.

## III. Direct Copying

37. As mentioned above, Defendant's unauthorized uses of the FPM Copyrights consist of direct actual copying of the FPM Copyrights embedded within its own promotional videos.

**ANSWER:** Ford denies the allegations contained in paragraph 37.

38. Because Defendant's use of the FPM Copyrights are direct copies, the qualitative and quantitative similarities are literally identical.

**ANSWER:** Ford denies the allegations contained in paragraph 38.

39. There is also no doubt that Defendant had access to the FPM Copyrights. TuneSat inquired as to whether Defendant had a license for its twelve (12) uses of the FPM Copyrights on April 17, 2017, and Defendant could not provide licenses for the use of those registered works. Defendant has also never denied using the FPM Copyrights, and could only have obtained access from the FPM website. The FPM Copyrights involved in this action are solely and exclusively available on the FPM website.

**ANSWER:** Ford denies the allegations contained in paragraph 39, except admits that TuneSat contacted Ford on or about April 17, 2017 concerning alleged uses of Freeplay's music and that it is not in possession of the referenced licenses.

**V.** **Continued Exploitation**

40.     Even after being confronted by TuneSat and FPM in 2017, Defendant continued to use and exploit the FPM Copyrights in its Infringing Works willfully and without any regard for FPM's rights.

**ANSWER:**     Ford denies the allegations contained in paragraph 40.

41.     Over the course of 2017, 2018, and 2019, TuneSat continued to discover additional infringements of FPM Copyrights in Defendant's videos, all together totaling at least fifty-four (54) FPM Copyrights in seventy-four (74) of Defendant's videos.  Defendant exploited the FPM Copyrights, without authorization, on YouTube and Facebook, all of which are identified and listed on Exhibit B, attached hereto. Had FPM not been so vigilant as to use TuneSat to search Defendant's videos uploaded across various streaming platforms, there is no way even a reasonable copyright owner could have discovered these infringements.  Upon information and belief, Defendant continued to improperly exploit the FPM Copyrights until at least April 16, 2020.

**ANSWER:**     Ford denies the allegations contained in paragraph 41.

**COUNT I:**
**COPYRIGHT INFRINGEMENT**

42.     FPM respectfully repeats and incorporates by reference the allegations contained within Paragraphs 1 through 41 as though fully set forth herein.

**ANSWER:**     In response to paragraph 42, Ford repeats and re-alleges each of its responses to paragraphs 1 through 41 as if fully set forth herein.

43.     FPM is the legal and beneficial owner of the United States copyright in all rights, titles, and interests in the sound recordings and musical compositions listed in Exhibit A attached hereto.

**ANSWER:**     Ford lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 43.

44.     Each of the fifty-four (54) FPM Copyrights have been duly registered with the U.S. Copyright Office, and registration numbers for the FPM Copyrights are identified in Exhibit A.

**ANSWER:**     Ford lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 44.

45.     Defendant willfully exploited at least fifty-four (54) FPM Copyrights at least seventy-four (74) times in commercial videos, as identified in Exhibit B.  The Infringing Works have been viewed thousands of times over the years on YouTube alone.  The infringement has continued until at least April 16, 2020.

**ANSWER:**     Ford denies the allegations contained in paragraph 45, except states that it lacks knowledge or information sufficient to form a belief as to the views of the so-called "Infringing Works."

46.     As discussed herein, Defendant had access to the FPM Copyrights and because the uses are a direct copying, the similarities are identical.

**ANSWER:**     Ford denies the allegations contained in paragraph 46.

47.     Defendant knowingly exploited the FPM Copyrights without authorization to do so.

**ANSWER:**     Ford denies the allegations contained in paragraph 47.

48.     TuneSat sent correspondence to Defendant on April 17, 2017 demanding that it provide valid licenses for its uses of twelve (12) of the FPM Copyrights.

**ANSWER:**     Ford denies the allegations contained in paragraph 48, except admits that TuneSat contacted Ford on or about April 17, 2017 concerning alleged uses of Freeplay's music.

49.     Not only could Defendant not provide any licenses for the twelve (12) uses of FPM Copyrights it was using at that time, Defendant continued to willfully, intentionally, and purposefully use and exploit the FPM Copyrights in its Infringing Works.

**ANSWER:**     Ford denies the allegations contained in paragraph 49, except admits that it is not in possession of the referenced licenses.

50.     Over the course of 2017, 2018, and 2019, TuneSat, through repeated searches, continued to discover additional infringements of FPM Copyrights in Defendant's videos, all together totaling at least fifty-four (54) FPM Copyrights in seventy-four (74) of Defendant's videos, all of which are identified and listed on Exhibit B, attached hereto.

**ANSWER:**     Ford denies the allegations contained in paragraph 50, except states that it lacks knowledge or information sufficient to form a belief as to the truth of the allegations concerning TuneSat's alleged "discoveries."

51.     Defendant's continuing unauthorized reproduction, distribution, public performance, synchronization, and display of the FPM Copyrights infringes FPM's exclusive rights in violation of the Copyright Act, 17 U.S.C. §§ 101, *et seq*.

**ANSWER:**     Ford denies the allegations contained in paragraph 51.

52.     Defendant's conduct, at all times relevant to this action, has been knowing, willful, and with complete disregard to FPM's rights.  Defendant understood the FPM licensing process yet willfully chose to continue to exploit the FPM Copyrights over the course of several years

without obtaining the necessary licenses and making the required payments.  Defendant obtained

significant profit, through the unauthorized use of the FPM Copyrights.  Namely, the FPM

Copyrights, which run throughout many of the advertisements prominently, assisted in the selling

of Ford automobiles.  Defendant would not have massively and prominently used the FPM

Copyrights as they did if that were not the case.

      **ANSWER:**   Ford denies the allegations contained in paragraph 52.

53.    As a proximate cause of Defendant's wrongful conduct, FPM has been irreparably

harmed and suffered actual damages including lost profits and licensing fees.

      **ANSWER:**   Ford denies the allegations contained in paragraph 53.

54.    Pursuant to 17 U.S.C. § 504(b), FPM is entitled to damages, including Defendant's

profits, in an amount to be proven at trial.

      **ANSWER:**   Ford denies the allegations contained in paragraph 54.

55.    Pursuant to 17 U.S.C. § 504(c), FPM is alternatively entitled to the maximum

amount of statutory damages, $150,000.00, for willful copyright infringement of each registered

work, which upon information and belief, is not less than $8,100,000.00.

      **ANSWER:**   Ford denies the allegations contained in paragraph 55.

56.    As a direct and proximate result of Defendant's infringement, FPM has incurred

attorneys' fees and costs which are recoverable pursuant to 17 U.S.C. § 505.

      **ANSWER:**   Ford denies the allegations contained in paragraph 56.

57.    Defendant's conduct has caused, is continuing to cause, and will further cause great

damage to FPM, which damages cannot be accurately measured in monetary terms, and therefore,

unless enjoined by the Court, FPM will suffer irreparable injury, for which FPM is without

adequate remedy at law. Accordingly, FPM is entitled to a permanent injunction pursuant to 17

U.S.C. § 502 following judgment, prohibiting further infringement, reproduction, distribution, sale, public performance, other use, or exploitation of FPM's registered works.

**ANSWER:**    Ford denies the allegations contained in paragraph 57.

### DEFENSES

Ford states the following defenses without assuming the burden of proof on such defenses that would otherwise rest with Freeplay, and without prejudice to Ford's right to assert any and all other defenses revealed during the course of discovery.

### First Defense

1.    The Amended Complaint fails to state claim upon which relief may be granted.

### Second Defense

2.    Freeplay's claim is barred, in whole or in part, because the alleged infringements were not caused by any volitional conduct by Ford and are not otherwise attributable to Ford.

### Third Defense

3.    Freeplay's claim is barred, in whole or in part, because the alleged uses of its songs did not occur in the United States and/or otherwise are not actionable conduct pursuant to the U.S. Copyright Act.

### Fourth Defense

4.    Freeplay's claim is barred, in whole or in part, due to Freeplay's license, consent and/or acquiescence to the alleged use of Freeplay's purported copyrights.

### Fifth Defense

5.    Freeplay's claim is barred, in whole or in part, by the doctrines of waiver, estoppel and/or ratification.

### Sixth Defense

6.      Freeplay's claim is barred, in whole or in part, because Freeplay does not own the copyrights to the allegedly infringed works.

### Seventh Defense

7.      Freeplay's claim is barred, in whole or in part, to the extent that Freeplay has failed to properly or timely register its purported works with the United States Copyright Office.

### Eighth Defense

8.      Freeplay's claim is barred, in whole or in part, because the allegedly copied works are not original to Freeplay and/or do not constitute protectable copyrightable matter.

### Ninth Defense

9.      Freeplay's claim is barred, in whole or in part, because Freeplay's purported copyrights are invalid and/or unenforceable.

### Tenth Defense

10.      Freeplay's claim is barred, in whole or in part, by the doctrine of misuse of copyright.

### Eleventh Defense

11.      Freeplay's claim is barred, in whole or in part, by the doctrine of unclean hands.

### Twelfth Defense

12.      Freeplay's claim is barred, in whole or in part, by the statutory immunity granted under 17 U.S.C. § 512.

### Thirteenth Defense

13.      Freeplay's claim is barred, in whole or in part, because any use of the allegedly infringed works was *de minimis*.

## **Fourteenth Defense**

14.     Freeplay's claim is barred, in whole or in part, by the statute of limitations.

## **Fifteenth Defense**

15.     Freeplay's claim is barred, in whole or in part, by the doctrine of laches.

## **Sixteenth Defense**

16.     Freeplay's claim for damages is barred, in whole or in part, due to Freeplay's failure

to mitigate damages.

## COUNTERCLAIMS

Defendant/Counterclaim-Plaintiff Ford, as and for its counterclaims against Plaintiff/Counterclaim-Defendant Freeplay, alleges as follows:

## NATURE OF THE ACTION

1.     This action is based on the meritless premise that Ford Motor Company can be held liable for the conduct of various foreign third-party affiliates who allegedly posted video advertisements on YouTube in foreign jurisdictions directed to foreign audiences.  Among a host of reasons, Freeplay's claim fails because the U.S. Copyright Act does not apply to such extraterritorial conduct and, independently, liability under the U.S. Copyright Act cannot be based on corporate affiliation alone.  But, assuming that Ford somehow could be deemed responsible for this third-party extraterritorial conduct (it cannot), Ford asserts the counterclaims herein because this action is a direct result of years of false and deceptive advertising by Freeplay to lure unsuspecting users into believing that the music offered on its website is "free."

2.     Beginning with its very name – "Freeplay" – its business model is premised on enticing Internet users to download what is prominently advertised to the public to be "free" music, and then threatening and commencing copyright strike suits in an attempt to extort vast amounts of money after its music is actually used.  Since its inception in 2001, Freeplay has asserted copyright infringement claims in *dozens* of lawsuits, extracting settlements in these litigations and, upon information and belief, in an untold number of other instances where the simple threat of litigation was enough to shake down Internet users who mistakenly thought they were getting exactly what Freeplay advertises – music that was "free" to use.

3.     When a consumer looking for music to incorporate into a YouTube video searches Google with the term "free music," one of the top five search results is Freeplay's website,

www.freeplaymusic.com.  A user who clicks through to Freeplay's website then sees the following

offer, displayed front and center on Freeplay's homepage:



Freeplay's copyright infringement claim is premised on the very falsity of this promise of songs

that are "FREE FOR YouTube."

4.     Freeplay's deceptive practices are evident even in its own pleading, in which it

purports to describe the user experience on its website that went live in April 2018.  Freeplay

ignores the critical fact that virtually all of the allegedly "infringing" videos at issue in this action

were created and posted on YouTube well *before* April 2018.  (And the few posted thereafter were

for a Brazilian entity, in Portuguese, and directed to Brazilian consumers.)

5.     Prior to this 2018 change, users lured by Freeplay's false promise of "free" music

faced an entirely different user experience.  Only buried deep within Freeplay's Web domain did

Freeplay purport to disclose that this music was, in fact, not "free."  That disclosure was made in

"Terms of Use" that a typical user would never see, nor was ever required to see, at *any* point in

the course of downloading Freeplay's music.  Freeplay's victims learn that its promise of "FREE

[SONGS] FOR YouTube" was anything but, only when Freeplay consummates its bait-and-switch

scheme with an unexpected demand for payment, often for $150,000 in statutory damages for *each*

downloaded song, based on the outrageous notion that the user's unwitting "copyright

infringement" was "willful."

6.      Freeplay's false advertising has harmed an untold number of users who innocently use Freeplay's "free" music in creating their YouTube videos, only to have these videos taken down when Freeplay issues a copyright takedown notice to YouTube and fall victim to Freeplay's exorbitant settlement demands under threat of litigation.  Perhaps most significantly in this action, it has forced Ford to expend costly legal fees to defend against Freeplay's litigation, based on purported copyright "infringement" that is a direct, foreseeable and deliberate result of Freeplay's own false and deceptive advertising.

## JURISDICTION AND VENUE

7.      This action arises under section 43(a) of the Lanham Act, 15 U.S.C. §§ 1125(a), and N.Y. Gen. Bus. Law §§ 349 and 350.

8.      The Court has subject matter jurisdiction over the claims arising under the Lanham Act pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338(a), and supplemental jurisdiction over the claims arising under state statutory law pursuant to 28 U.S.C. §§ 1338(b) and 1367.

9.      The Court has personal jurisdiction over Freeplay because, among other things, Freeplay has waived any objection to personal jurisdiction by having commenced this action in this District.

10.     Venue is proper in this District pursuant to 28 U.S.C. § 1391.

## THE PARTIES

11.     Ford is a company organized under the laws of the State of Delaware with a principal place of business located at 1 American Road, Dearborn, Michigan, 48126.

12.     Upon information and belief, Freeplay is a Delaware limited liability company, with a principal place of business in New York, New York.

23

## FACTS RELEVANT TO ALL CLAIMS

### FREEPLAY'S FALSE AND MISLEADING OFFER OF "FREE MUSIC"

13.     The counterclaims herein seek redress for Freeplay's deliberate and unlawful false and misleading representations that its music is "free" to use on YouTube videos.

14.     A typical user searching for free music on the Internet might run a Google search for "free music," which turns up the following results:



15.     As shown above, Freeplay is the fourth result shown in a Google search for "free music."  Upon information and belief, all of the other sites shown above do in fact provide free

music.  Not surprisingly, anyone searching the Internet for "free music" would assume that Freeplay's music is also free.

16.     This assumption is reinforced when a consumer then proceeds to Freeplay's website (www.freeplay.com), which prominently offers "OVER 50,000 SONGS FREE FOR YouTube AND MORE":



17.     Upon information and belief, from 2010 through at least June 2013 – a period during which 54 of the 74 YouTube videos identified by Freeplay were posted – the deception of Freeplay's website was perhaps the most obvious.

18.     During this period, a user could simply download music directly from Freeplay's website without agreeing to any license.  In the course of selecting and downloading songs, the user was never asked for payment or an agreement to pay in the future.  Indeed, at no point in that process was a user required to read, much less agree to, any terms of use or given warning that Freeplay might demand $150,000 payment in the future for the user's purportedly "willful" copyright infringement.

19.     Upon information and belief, Freeplay changed its website in or around July 2013.

20.     Thereafter, through at least March 2018 – a period during which another 15 of the 74 YouTube videos identified by Freeplay were posted – Freeplay's deception of users continued.  Upon information and belief, users lured by Freeplay's representations of "free" music for their YouTube videos continued to be able to download Freeplay's songs without ever being prompted

or required to read Freeplay's terms of use or manifest *any* assent or agreement to the provisions therein. But only in the fine print of these so-called "terms of use" did Freeplay purport to notify users that its music was "free" only for certain uses.

21.     Upon information and belief, Freeplay changed its website again in or around April 2018. Only after that change is a user required to provide any consent to Freeplay's Terms of Use to download music from Freeplay's website. Nonetheless, Freeplay continues its deceptive practices with its unqualified solicitation that its website offers "OVER 50,000 SONGS FREE FOR YouTube AND MORE."

22.     Because of the powerful draw of "free" products and services on consumers, virtually every level of government has promulgated rules, regulations and guidelines that specifically prohibit false and misleading representations concerning "free" offers of the type Freeplay has made.

23.     The Federal Trade Commission, for example, has promulgated a "Guide Concerning the Use of the Word 'Free' and Similar Representations." That Guide explains: "Because the purchasing public continually searches for the best buy, and regards the offer of 'Free' merchandise or service to be a special bargain, all such offers must be made with extreme care so as to avoid any possibility that consumers will be misled or deceived." 16 C.F.R. § 251.1(a)(2). The Guide thus provides: "When making 'Free' or similar offers all the terms, conditions and obligations upon which receipt and retention of the 'Free' item are contingent should be set forth clearly and conspicuously at the outset of the offer so as to leave no reasonable probability that the terms of the offer might be misunderstood." *Id.* § 251.1(c).

24.     Similarly, the Rules of the City of New York ("RCNY"), where Freeplay is based and conducts its misleading activities, provide: "A seller who imposes a condition on a free offer

26

must describe the condition clearly and conspicuously.  The description of every condition on a free offer must be placed near the word 'free'….  This condition must be in print at least half as large as the print used for the word 'free.'"  6 RCNY § 5-06(b).

25.     Notwithstanding these rules and regulations, Freeplay has brazenly misrepresented to consumers that it offers "OVER 50,000 SONGS **FREE** FOR YouTube AND MORE YouTube AND MORE," without the requisite "clear and conspicuous" disclosure of the conditions that purportedly must be met for the offer of "free music" to apply.

## FREEPLAY'S FALSE ADVERTISING HAS HARMED
## FORD AND THE PUBLIC

26.     The natural and proximate – and, indeed, deliberate – consequence of Freeplay's misconduct has been the very copyright "infringements" by which Freeplay purports to have been injured.  In reality, Freeplay seeks to earn a windfall from these "infringements" through exorbitant settlement and litigation demands.

27.     This action is just one of *dozens* in which Freeplay has asserted copyright infringement claims over the last several years.  Upon information and belief, most, if not all, of these litigations resulted in monetary settlements for Freeplay that exceeded what it could or would have earned in license fees, had the purported terms of usage been properly disclosed on its website.

28.     Upon information and belief, Freeplay has sent demand letters to other individuals and entities it never sued, and who entered into monetary settlements with Freeplay precisely to avoid the litigation that Freeplay threatened, but that its victims could not afford to defend.

29.     Upon information and belief, Freeplay routinely demands payment of $150,000 *per work* in its settlement demands and in litigation pleadings – as it does in the instant action – even though the purported "infringements" were caused by its own false and deceptive advertising, and

even though the cost to license those works from Freeplay would have been a minute fraction of its unconscionable demands.

30.     As a direct result of Freeplay's false and deceptive representations and advertisements, Ford, as well as other victims of Freeplay's practices, have been forced to expend costly legal fees to defend against Freeplay's predatory litigation efforts.  Freeplay's conduct has also caused reputational injury by falsely casting Ford as a copyright infringer.

31.     The foregoing harm is a direct result of Freeplay's false, deceptive and misleading advertisements and representations, made willfully for the very purpose of inducing the purported "infringements" – and ensuing settlements – that Freeplay deliberately baits to obtain undeserved monetary gain.

32.     Unless Freeplay's predatory business practices are put to a halt, members of the public will continue to be harmed, as YouTube users continue to download and use what they believe to be exactly what Freeplay advertises – "OVER 50,000 SONGS FREE FOR YouTube AND MORE."

**COUNT I**
**(FEDERAL FALSE ADVERTISING)**

33.     Ford repeats and re-alleges the allegations in paragraphs 1 through 32 as if fully set forth herein.

34.     Freeplay has made false, deceptive, and misleading descriptions and representations of fact in its commercial advertising concerning the nature, characteristics, and qualities of its goods, services, and commercial activities, in violation of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B).

35.     Freeplay's false, deceptive, and misleading descriptions and representations that its music is "free," without adequate disclosure of the conditions and limitations under which its music is purportedly not "free," have deceived and are likely to deceive purchasers and consumers.

36.     Freeplay's false, deceptive, and misleading advertising has damaged Ford's commercial interests, among other things, by inducing the very "infringements" of which it complains and thereby harming Ford's goodwill and reputation by casting it as a supposed copyright "infringer," and forcing Ford to expend legal fees to defend Freeplay's meritless lawsuit that is the deliberate and intended result of its deception.

37.     Pursuant to 15 U.S.C. § 1116, Ford is entitled to an injunction restraining Freeplay, its agents, employees, representatives and all persons acting in concert with it from engaging in further acts of false advertising, and ordering removal of all of Freeplay's false advertisements.

38.     Pursuant to 15 U.S.C. § 1117, Ford is entitled to recover the damages sustained as a result of Freeplay's acts in violation of Lanham Act § 43(a), in an amount to be proven at trial.

39.     Pursuant to 15 U.S.C. § 1117, Ford is entitled to recover from Freeplay the profits that it has obtained as a result of its false, deceptive, and misleading advertising.

40.     Freeplay's conduct is and, at all relevant times, has been willful, deliberate, intentional, and in bad faith.  Pursuant to 15 U.S.C. § 1117, Ford is thus entitled to recover additional damages, profits and reasonable attorneys' fees.

## <u>COUNT II</u>
## (VIOLATION OF N.Y. GEN. BUS. LAW § 349)

41.     Ford repeats and re-alleges the allegations in paragraphs 1 through 40 as if fully set forth herein.

42.     Freeplay's false, misleading, and deceptive statements and representations constitute unfair and deceptive business practices under the laws of the various states, including § 349 of the N.Y. General Business Law.

43.     Freeplay's false, misleading, and deceptive statements and representations that its music is "free," without adequate disclosure of the conditions and limitations under which its music is purportedly not "free," are deceptive and materially misleading.

44.     Freeplay's false, misleading, and deceptive statements and representations of fact are directed toward consumers, and have resulted in consumer injury and harm to the public interest in New York and nationwide.

45.     Freeplay's false, misleading, and deceptive representations and practices have also damaged Ford's commercial interests, among other things, by inducing the very "infringements" of which it complains and thereby harming Ford's goodwill and reputation by casting it as a supposed copyright "infringer," and forcing Ford to expend legal fees to defend Freeplay's meritless lawsuit that is the deliberate and intended result of its deception.

46.     The transactions by which such harm was caused occurred in New York.  These transactions include, among other things, the creation, maintenance and operation of Freeplay's misleading website and the download transactions that took place directly on such website.

47.     Freeplay's conduct has caused, and will continue to cause, irreparable injury to Ford and to members of the public.  Ford is entitled to an injunction restraining Freeplay, its agents, employees, representatives and all persons acting in concert with it from engaging in further acts of false advertising, and ordering removal of all of Freeplay's false advertisements.

48.     By reason of Freeplay's conduct, Ford has suffered injury in fact in an amount to be proven at trial.

49.     Freeplay's conduct is and, at all relevant times, has been willful, deliberate, intentional, and in bad faith.  Plaintiff is thus entitled to recover treble damages and reasonable attorneys' fees.

### COUNT III
### (VIOLATION OF N.Y. GEN. BUS. LAW § 350 *et seq.*)

50.     Ford repeats and re-alleges the allegations in paragraphs 1 through 49 as if fully set forth herein.

51.     Freeplay has made, published, disseminated, and circulated false, deceptive, and misleading statements, representations, and advertisements that constitute false advertising under the laws of the various states, including N.Y. Gen. Bus. Law §§ 350 *et seq.*

52.     Freeplay's false, misleading, and deceptive representations and advertisements that its music is "free," without adequate disclosure of the conditions and limitations under which its music is purportedly not "free," are deceptive and materially misleading.

53.     Freeplay's false, misleading, and deceptive representations and advertisements are directed toward consumers, and have resulted in consumer injury and harm to the public interest in New York and nationwide.

54.     Freeplay's false, misleading, and deceptive representations and practices have also damaged Ford's commercial interests, among other things, by inducing the very "infringements" of which it complains and thereby harming Ford's goodwill and reputation by casting it as a supposed copyright "infringer," and forcing Ford to expend legal fees to defend Freeplay's meritless lawsuit that is the deliberate and intended result of its deception.

55.     The transactions by which such harm was caused occurred in New York.  These transactions include, among other things, the creation, maintenance and operation of Freeplay's misleading website and the download transactions that took place directly on such website.

56.     By reason of Freeplay's conduct, Ford has suffered injury in fact in an amount to be proven at trial.

57.     Freeplay's conduct has caused, and will continue to cause, irreparable injury to Ford and to members of the public.  Ford is entitled to an injunction restraining Freeplay, its agents, employees, representatives and all persons acting in concert with it from engaging in further acts of false advertising, and ordering removal of all of Freeplay's false advertisements.

58.     Freeplay's conduct is and, at all relevant times, has been willful, deliberate, intentional, and in bad faith.  Plaintiff is thus entitled to recover treble damages and reasonable attorneys' fees.

## PRAYER FOR RELIEF

WHEREFORE, Counterclaim-Plaintiff Ford respectfully requests judgment against Freeplay as follows:

a.     Injunctive relief prohibiting Freeplay, its agents, or anyone working for, in concert with or on behalf of Freeplay from publishing, disseminating and/or promoting: (a) any advertisements or materials, including on Freeplay's website, claiming that any of Freeplay's music is "free," without disclosing all applicable conditions and limitations on such use clearly and conspicuously in immediate proximity to all instances in which Freeplay claims such music is "free"; (b) all other false, misleading and deceptive statements, representations and advertisements described in the Counterclaims; and (c) all other false, misleading and deceptive statements, representations and advertisements as determined at trial or other proceeding in this action.

b.     An Order directing Freeplay to account for and disgorge all profits derived from the acts complained of herein.

c.     An award of damages sustained as a result of Freeplay's wrongful conduct.

      d.      The trebling of all damages and profits as a result of Freeplay's willful, intentional

and deliberate acts.

      e.      Recovery of costs and reasonable attorneys' fees.

      f.      Pre-judgment and post-judgment interest.

      g.      Such other and further relief as the Court deems just and proper.

## **DEMAND FOR JURY TRIAL**

Ford requests a trial by jury on all issues so triable.


Dated: September 2, 2020            Respectfully Submitted,

                              By: */s/ Wook Hwang*
                              Wook Hwang
                              Loeb & Loeb LLP
                              345 Park Avenue
                              New York, NY 10154
                              (212) 407-4000
                              whwang@loeb.com

                              Nina Ruvinsky
                              321 North Clark Street, Suite 2300
                              Chicago IL, 60654
                              (312) 464-3192
                              nruvinsky@loeb.com

                              *Attorneys for Defendant Ford Motor*
                              *Company*